UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROUBEN MADIKIANS | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 04-12451-JLT |
| | * | |
| AMERICAN AIRLINES ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS ("APFA"), et al., | * * * | |
| | * | |
| Defendants. | * | |

MEMORANDUM

July 26, 2005

TAURO, J.

Rouben Madikians ("Plaintiff") alleges that the Association of Professional Flight Attendants ("APFA") and APFA union officials violated state and federal law when they defamed and retaliated against him in response to his efforts to remove Julia Carrigan ("Carrigan"), the Boston Domestic Chairperson of the APFA, from office.

Carrigan, APFA representative Amy Milenkovic ("Milenkovic"), and the APFA (collectively "Union defendants") have moved to dismiss Plaintiff's federal claims and have asked this court to deny supplemental jurisdiction over Plaintiff's state law claims.

**Background**

At all relevant times, American Airlines, Inc. ("AA") employed Plaintiff.[1] Plaintiff was also a member in good standing of the APFA, an organized collective bargaining association.

---

[1] Unless otherwise noted, the following background facts are drawn from Plaintiff's Second Amended Complaint. For the purposes of the instant motion, this court assumes, as it must, that all of Plaintiff's allegations are true.

Carrigan was the "Domestic Chairperson" of the "Boston Base" of the APFA.[2] Milenkovic was an APFA Representative appointed by Carrigan.

In December 2003, Plaintiff informed Carrigan of his petition campaign to remove her as Domestic Chairperson of the APFA. Plaintiff also released records that showed Carrigan traveled for personal events while purportedly on APFA or AA business. Throughout the early months of 2004, Plaintiff obtained approximately 125 signatures from APFA union members endorsing his petition for Carrigan's removal from office.

During his petition efforts, Plaintiff learned that Carrigan and Milenkovic were conducting a "'smear' campaign" against him.[3] Carrigan and Milenkovic falsely stated that Plaintiff stalked Carrigan's family and minor son, which was "especially outrageous and damaging to [Plaintiff's] reputation because he is known by the defendant to be gay."[4] Carrigan also filed a police report with the Boston Police, allegedly to "directly harass and injure" Plaintiff.[5] Carrigan told the police that "'she does not really feel threatened by subject,'" but "'wants to file a report to begin reporting suspect's actions in case she feels more threatened.'"[6] In addition, Carrigan and Milenkovic, with the approval of AA, published and displayed to APFA members a newsletter that reported Plaintiff was stalking Carrigan's family and minor son. And, during an open APFA meeting, Carrigan stated to an audience that Plaintiff was

---

[2] Pl.'s Second Am. Compl. ¶ 5.

[3] Id. ¶ 12.

[4] Id.

[5] Id. ¶ 14.

[6] Id.

stalking her child.

In February 2004, Plaintiff filed a grievance with AA concerning its approval of the purportedly defamatory newsletter. Plaintiff also notified the APFA of his dispute with AA. The APFA, however, failed to take any action on Plaintiff's behalf. When AA eventually completed its investigation, it took no known action and did not deliver to Plaintiff its findings and/or recommendations.

Also in February 2004, Plaintiff filed formal charges with the APFA, demanding an investigation of Carrigan. In March 2004, Plaintiff filed a further grievance and demanded a hearing. Again, the APFA failed to take any action. By June 2004, the APFA informed Plaintiff it would not accept his grievances, and no investigation was performed.

## Discussion

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that dismissal is appropriate where a party "fail[s] to state a claim upon which relief can be granted."[7] A claim should be dismissed pursuant to Rule 12(b)(6) "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"[8] In considering a Rule 12(b)(6) motion to dismiss, "a court should not decide questions of fact."[9] Rather, it "must view the facts presented in the pleadings and all reasonable inferences to be

---

[7] Fed. R. Civ. P. 12(b)(6).

[8] Roeder v. Alpha Indus., Inc., 814 F.2d 22, 25 (1st Cir. 1987) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

[9] Id.

drawn therefrom in the light most favorable to the nonmoving party."[10]  Documents in support of a motion to dismiss may be considered by the court when "a complaint's factual allegations are expressly linked to — and admittedly dependent upon — a document (the authenticity of which is not challenged)."[11]  In such cases, the documents effectively merge into the pleadings.[12]

A.    Retaliation under the Labor Management Reporting and Disclosure Act

In Count One, Plaintiff alleges that the Union defendants retaliated against him after he started his petition drive to remove Carrigan from union office, in violation of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA").[13]  The LMRDA is the principal federal statute regulating the internal affairs of labor unions.  Title I of the LMRDA, the "Bill of Rights of Members of Labor Organizations," aims to prevent union retaliation by "plac[ing] emphasis on the rights of union members to freedom of expression without fear of sanctions by the union, which in many instances could mean loss of union membership and in turn loss of livelihood."[14]

In their filings, the Parties focus on three sections enumerated in Title I: (1) the right to free speech and assembly; (2) the right to due process in union disciplinary actions against union

---

[10] Hathaway v. Stone, 687 F. Supp. 708, 710 (D. Mass. 1988).

[11] Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998).

[12] Id.

[13] 29 U.S.C. §§ 401 et seq.

[14] Finnegan v. Leu, 456 U.S. 431, 435-36 (1982).

members; and (3) the right to equal voting rights.[15] The Parties' filings also invoke two jurisdictional sections of the LMRDA, which protect a union member from "infringement" of his Title I rights ("Section 102"),[16] and from "discipline" by his union ("Section 609").[17] Even in the absence of "discipline" within the meaning of Section 609, a union member can bring a claim under Section 102 for "infringement" of Title 1 rights.[18] This court, therefore, will consider claims of both "infringement" and "discipline" regarding Plaintiff's Title I rights.[19]

1. <u>Freedom of Speech and Assembly</u>

Plaintiff alleges that the Union defendants defamed him, thereby violating his right to freedom of speech and assembly under Section 101(a)(2) of the LMRDA.[20] Section 101(a)(2)

---

[15] 29 U.S.C. § 411(a)(1), (2), (5). Nowhere in the complaint does Plaintiff state which sections of the LMRDA he relies on in bringing his action.

[16] Section 102 states "[a]ny person whose rights secured by the provisions of [Title 1] have been infringed may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate." 29 U.S.C. § 412.

[17] Section 609 provides that "[i]t shall be unlawful for any labor organization, or any officer, agent ... or other representative of a labor organization ... to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of [the LMRDA]." 29 U.S.C. § 529.

[18] See Finnegan v. Leu, 456 U.S. 431, 439 (1982).

[19] Plaintiff's opposition to the motion to dismiss raises Section 102 and Section 609 arguments. See Linnane v. Gen. Elec. Co., 948 F.2d 69, 71 n.3, 72 (1st Cir. 1991) (explaining that a district court may consider "infringement" or "discipline" of Title I LMRDA rights when the plaintiff alerts the court to the presence of the jurisdictional claim or the complaint plainly implicates the section).

[20] 29 U.S.C. § 411(a)(2). Plaintiff does not state clearly whether he is alleging that defamation interferes with his rights under Section 101(a)(1) or under Section 101(a)(2). Because Plaintiff's arguments appear to invoke both sections, defamation will be discussed within the context of each.

provides a union member with "the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting . . . ."[21] The Union defendants argue that defamation is protected speech within the context of intra-union political activity and, therefore, is not actionable under the LMRDA. This court agrees.

The scope of Section 101(a)(2) is not coextensive with the First Amendment.[22] "Rather, Congress sought to provide certain basic and fundamental rights to union members, while at the same time avoiding undue judicial interference with the mechanics of union self-governance."[23] Union members are free to express malicious or even libelous views without fear of discipline, and Section 101(a)(2) does not provide union members with a right of action for defamatory statements made by the union organization.[24]

Here, Plaintiff's complaint asserts that union representatives defamed him in the midst of a campaign to remove a rival from office. But defamation traveling from a union organization to a union member is not actionable under Section 101(a)(2).[25] And defamation is especially

---

[21] Id.

[22] Ackley v. W. Conference of Teamsters, 958 F.2d 1463, 1475 (9th Cir. 1992).

[23] Id.

[24] See Harrison v. Local 54 of the Am. Fed'n of State, County & Mun. Employees, 518 F.2d 1276, 1280-82 (3d Cir. 1975); see also Commer v. Keller, 64 F. Supp. 2d 266, 271, 274 (S.D.N.Y. 1999) (finding that defamatory speech against rival union officials, in the form of critical statements in a union newsletter and at chapter meetings, did not state a claim under Section 101(a)(2) unless there is a direct threat of punishment against the speaker).

[25] See Harrison, 518 F.2d at 1280-82.

protected before imminent elections.[26] Under these circumstances, the Union defendants' alleged defamation does not violate Plaintiff's free speech and assembly rights, and Plaintiff's Section 101(a)(2) claim cannot survive the motion to dismiss.

   2.   Due Process in Union Disciplinary Actions

Plaintiff next argues that he was "otherwise disciplined," within the meaning of Section 101(a)(5) of Title I the LMRDA.[27] Section 101(a)(5) stipulates that no union member may be "fined, suspended, expelled, or *otherwise disciplined* except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; [and] (C) afforded a full and fair hearing."[28] The meaning of "otherwise disciplined" in Section 101(a)(5) is largely governed by the Supreme Court's decision in *Breininger v. Sheet Metal Workers International Ass'n*.[29]

In *Breininger*, the Court affirmed the dismissal of a claim where the union member alleged he was the victim of a personal vendetta of two union officers.[30] The Court noted that the types of discipline listed in Section 101(a)(5), "fine, expulsion, and suspension — imply some

---

[26]See Commer, 64 F. Supp. 2d at 271, 274 (explaining that speech occurring incident to an imminent election is among the type of speech most important to union democracy).

[27]29 U.S.C. § 411(a)(5).

[28]Id. (emphasis added). The phrase "otherwise discipline[d]" has the same meaning in Section 101(a)(5) and Section 609 of the LMRDA. See Breininger v. Sheet Metal Workers Int'l Ass'n, 493 U.S. 67, 90 n.13 (1989). Because Plaintiff does not allege that he was fined, suspended, or expelled, the success of his claim under Section 101(a)(5) turns on the meaning of "otherwise disciplined."

[29]493 U.S. 67 (1989).

[30]Id. at 94.

sort of established disciplinary process rather than ad hoc retaliation by individual union officers."[31] While unions cannot circumvent Section 101(a)(5) by developing novel forms of penalties for union members, Congress still meant "discipline" to mean penalties applied by the union acting in its official capacity.[32] To satisfy Section 101(a)(5), the discipline "must be done in the name of or on behalf of the union as an organizational entity."[33]

Like in *Breininger*, the complaint here does not allege the APFA acted in its official capacity to discipline Plaintiff. Instead, Plaintiff claims that Carrigan and Milenkovic published a union newsletter that included defamatory remarks about Plaintiff. Defamation by union officers in a newsletter, however, is not "discipline" within the meaning of Section 101(a)(5).[34] Under these circumstances, Plaintiff's claim under Section 101(a)(5) cannot survive a motion to dismiss.

    3.    <u>Equal Voting Rights</u>

Plaintiff also argues that he was "denied political access" because the Union defendants' defamation dissuaded union members from signing his petition.[35] Plaintiff appears to invoke

---

[31] <u>Id.</u> at 91-92.

[32] See <u>id.</u> at 92; <u>see also</u> <u>Linnane v. Gen. Elec. Co.</u>, 948 F.2d 69, 72 (1st Cir. 1991) (dismissing a Section 101(a)(5) claim where a union member failed to allege the union deliberately voted to discipline him in a formal or informal proceeding).

[33] <u>Breininger</u>, 493 U.S. at 92.

[34] <u>See</u> <u>Commer v. Keller</u>, 64 F. Supp. 2d 266, 271 (S.D.N.Y. 1999) (explaining that publication by officers of a union newsletter does not constitute discipline within the meaning of Section 101(a)(5)); <u>Kirk v. Transp. Workers Union</u>, 934 F. Supp. 775, 780, 785 (S.D. Tex. 1995) (finding that union officers' publication of a defamatory newsletter critical of their opponents is not considered "discipline" under Section 101(a)(5)).

[35] Pl.'s Opp'n to Union Defs.' Mot. to Dismiss Second Am. Compl. at 6.

Section 101(a)(1) of Title I of the LMRDA, which guarantees that "[e]very member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings . . . ."[36]

Section 101(a)(1) is "'no more than a command that [union] members and classes of members shall not be discriminated against in their right to nominate and vote.'"[37] To state a claim under Section 101(a)(1), a complaint must allege that a union member was denied the right to participate equally in the union's voting mechanisms.[38] In other words, Plaintiff must claim that the Union defendants "'deprived [him] of a right *specifically enumerated* in [Section 101(a)(1)], such as the right to an equal vote.'"[39]

Nowhere in the complaint is there any allegation that the Union defendants denied or deprived any union member of the right to sign Plaintiff's petition, vote in an election, or participate in union meetings.[40] The alleged defamation may have influenced union members'

---

[36] 29 U.S.C. § 411(a)(1).

[37] Local Unions 20 v. United Bhd. Of Carpenters & Joiners of Am., 223 F. Supp. 2d 491, 497 (S.D.N.Y. 2002) (quoting Calhoon v. Harvey, 379 U.S. 134, 139 (1965)).

[38] See Gilvin v. Fire, 259 F.3d 749, 755 (D.C. Cir. 2001) (where the appellate court held the district court properly dismissed a Section 101(a)(1) claim because the plaintiff had not alleged the violation of any equal right enumerated in that section, i.e. the right to nominate candidates, to vote in elections, to attend membership meetings, or to participate in such meetings).

[39] Gilvin, 259 F.3d at 761 (quoting Carothers v. Presser, 818 F.2d 926, 931 (D.C. Cir. 1987) (emphasis in original)).

[40] See Calhoon, 379 U.S. at 138.

decisions regarding the petition, but this court is unaware of any case law suggesting that such influence "infringes" a union member's equal voting rights.[41] Nor can the Union defendants' actions be considered formal "discipline" in the context of a union election.[42] Accordingly, Plaintiff's defamation claim under Section 101(a)(1) cannot survive the Union defendants' motion to dismiss.

B.   Duty of Fair Representation

In Count Four, Plaintiff alleges a breach of the duty of fair representation by the APFA for its failure to represent him in his grievance proceedings against AA. The duty of fair representation is a common law doctrine that "enforc[es] fully the important principle that 'no individual union member may suffer invidious, hostile treatment at the hands of the majority of his coworkers.'"[43] A union has a statutory duty to fairly represent "all of those employees, both in its collective bargaining with [the employer] . . . and in its enforcement of the resulting collective bargaining agreement."[44] A union breaches its duty of fair representation "'only when [its] conduct towards a member of the collective bargaining unit is arbitrary, discriminatory, or in

---

[41] Plaintiff cites Fiori v. Truck Drivers, 354 F.3d 84, 86-91 (1st Cir. 2004), for the proposition that libel might influence votes in a union election, thereby resulting in a denial of equal voting rights. Plaintiff's reliance on *Fiori* is misplaced. The libel action in *Fiori* was brought as a *state law* claim. The First Circuit addressed libel and voting only in the context of determining damages for the state law claim, not under the LMRDA.

[42] See discussion supra Parts A.1, A.2.

[43] Breininger, 493 U.S. at 79 (quoting Motor Coach Employees v. Lockridge, 403 U.S. 274, 301 (1971)).

[44] Vaca v. Sipes, 386 U.S. 171, 177 (1967).

bad faith.'"[45]

Breach of the duty of fair representation is a cause of action when the union is the "exclusive bargaining representative" of its members.[46] If a union has the sole power under a collective bargaining agreement to invoke a union member's grievance against his employer, and the union has refused to process the grievance, then a union employee can bring a duty of fair representation claim against the union.[47] Yet, "[i]f a union does not serve as the exclusive agent for the members of a bargaining unit with respect to a particular matter, there is no corresponding duty of fair representation."[48] When a union member has the right to select a representative other than the union in a grievance proceeding, "the employee's interests are protected by the availability of, and the right to choose, the representative services of another party . . . [and] the fundamental reason for applying the doctrine of fair representation does not exist."[49]

In Plaintiff's case, Article 28(a) of the collective bargaining agreement between the APFA and AA gave Plaintiff the option of pursuing his grievance against AA with the aid of the

---

[45]Miller v. United States Postal Serv., 985 F.2d 9, 11 (1st Cir. 1993) (quoting Vaca, 386 U.S. at 190).

[46]See Vaca, 386 U.S. at 177.

[47]See Vaca, 386 U.S. at 185 (explaining that a union's exclusive right to bring a grievance claim against the employer is one of the essential elements needed to invoke the union's duty of fair representation to its members in grievance proceedings).

[48]Freeman v. Local Union No. 135 Chauffers, 746 F.2d 1316, 1321 (7th Cir. 1984).

[49]Am. Fed'n of Gov't Employees v. Fed. Labor Relations Auth., 812 F.2d 1326, 1328 (10th Cir. 1987).

APFA or with non-union representation.[50]  Article 28(a) states: "[i]f the [grievance] is submitted through an APFA representative, a signed authorization must be submitted to the Company, designating the APFA as the representative of the Flight Attendant(s) affected with respect to the dispute.  Employees covered by this Agreement may be represented at a Dispute Resolution Conference by such person as they may choose and designate."[51]

Article 28(a) of the collective bargaining agreement makes it clear that Plaintiff was free to select a representative from outside the APFA to assist him in grievance proceedings.  Under these circumstances, the APFA was not Plaintiff's exclusive agent, and "the rationale for the duty of fair representation evaporated."[52]  Accordingly, Plaintiff's duty of fair representation claim must be dismissed.

C.      Breach of the Collective Bargaining Agreement

In Count Five, Plaintiff asserts that the APFA violated the collective bargaining agreement when it failed to represent him in his grievance proceedings against AA.  This is a duty of fair representation claim under a different name.  Because this court has found that the APFA had no obligation to represent Plaintiff under the collective bargaining agreement with respect to his grievance, Plaintiff cannot pursue a contract claim for a breach of this non-existent

---

[50]Even though the Union defendants submitted Article 28(a) of the collective bargaining agreement as an attachment to their motion to dismiss, this court may consider it.  See Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) (explaining that it is proper to consider a document in support of a motion to dismiss when a complaint's factual allegations are expressly linked to the document and its authenticity is not challenged).

[51]Union Defs.' Mem. In Supp. of the Mot. to Dismiss Second Am. Compl. at Ex. B (Article 28(a)(3)(b)).

[52]Freeman, 746 F.2d at 1321.

duty.

A labor union may, however, assume additional responsibilities towards employees beyond the duty of fair representation in a collective bargaining agreement. "If an employee claims that a union owes him a more far-reaching duty, he must be able to point to language in the collective-bargaining agreement specifically indicating an intent to create obligations enforceable against the union by the individual employees."[53] Here, Plaintiff points to no provision in the collective bargaining agreement that would give rise to a union obligation above and beyond the duty of fair representation. Under these circumstances, this court must dismiss Plaintiff's claim alleging a breach of the collective bargaining agreement.

D.  Breach of the APFA Constitution under the Labor Management Relations Act

In Count Six, Plaintiff claims the APFA breached its constitution when it failed to act on his charge that Carrigan was abusing her role as an APFA officer, in violation of Section 301 of the Labor Management Relations Act.[54] Section 301 provides federal jurisdiction for "violation of contracts between an employer and a labor organization . . . or between any such labor organizations . . . ."[55] Under Section 301, a union constitution can be a "contract."[56] A union member, however, may bring a cause of action for violation of a union constitution under Section 301 "only if it is charged that the breach alleged violates a contract between two labor

---

[53] United Steelworkers of Am. v. Rawson, 495 U.S. 362, 374 (1990).

[54] 29 U.S.C. § 185.

[55] Id. § 185(a).

[56] United Ass'n of Journeymen v. Local 334, United Ass'n of Journeymen, 452 U.S. 615, 622 (1981).

organizations."[57] A constitution that governs a parent union and its local affiliate unions is also considered to be a contract "between two labor organizations."[58]

Plaintiff's complaint alleges that the APFA breached its own constitution. Additionally, no reasonable inference can be drawn from the complaint that the APFA constitution is a contract or agreement between the APFA and a local affiliate union.[59] By all appearances, the APFA is a single entity. Consequently, Plaintiff's Section 301 claim cannot survive the motion to dismiss.

E.   Supplemental Jurisdiction over State Law Claims

Plaintiff also advances Massachusetts state law claims against the Union defendants for defamation (Count Two), intentional infliction of emotional distress (Count Three), and discrimination on the basis of sexual orientation (Count Seven).

When a district court dismisses all claims over which it has original jurisdiction, it can also decline to exercise supplemental jurisdiction over the remaining state law claims.[60] District courts typically decline to exercise supplemental jurisdiction when the federal claims are dismissed before trial or at an early state of litigation.[61] This court has dismissed Plaintiff's federal claims at the pleadings stage. This court, therefore, declines to exercise supplemental

---

[57] Wooddell v. Int'l Bhd. of Elec. Workers, Local 71, 502 U.S. 93, 99 n.3 (1991).

[58] See id. at 99-100.

[59] Courts have refused to allow Section 301 claims where a union member sues a single union entity for breach of its constitution. See e.g. Korzen v. Local Union 705, Int'l Bhd. of Teamsters, 75 F.3d 285, 288 (7th Cir. 1996).

[60] 28 U.S.C. § 1367(c)(3).

[61] See McInnis-Misenor v. Maine Med. Ctr., 319 F.3d 63, 74 (1st Cir. 2003); see also O'Connor v. Commonwealth Gas Co., 251 F.3d 262, 272-73 (1st Cir. 2001).

jurisdiction over the remaining state law claims.

## CONCLUSION

For the foregoing reasons, the Union defendants' motion to dismiss Count One (retaliation), Count Four (failure of fair representation), Count Five (breach of collective bargaining agreement), and Count Six (breach of the APFA constitution) is ALLOWED. The Union defendants' motion to deny supplemental federal jurisdiction over the state law claims is ALLOWED. This court draws no conclusions as to the liability of the Union defendants for any state law claims.

AN ORDER WILL ISSUE

    /s/ Joseph L. Tauro
United States District Judge